# EXHIBIT 1

KEVIN M. LOEW, ESQ., CA Bar No. 238080
kloew@waterskraus.com
SUSAN M. ULRICH, ESQ., CA Bar No. 302253
sulrich@waterskraus.com
NICOLE R. POURSALIMI, ESQ., CA Bar No. 348440
npoursalimi@waterskraus.com
WATERS KRAUS PAUL & SIEGEL
11601 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
310-414-8146 Telephone
310-414-8156 Facsimile

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/15/2024 12:48 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Ceballos, Deputy Clerk

**Attorneys for Plaintiff**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

JOHN AD DOE

Plaintiff,

vs.

THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; THE WHITTIER CALIFORNIA STAKE, also known as THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 1 to 100, inclusive,

Defendants.

Case No. 24NWCV04517

**COMPLAINT FOR DAMAGES**

**1) NEGLIGENCE**
**2) NEGLIGENT SUPERVISION OF A MINOR**
**3) SEXUAL ABUSE OF A MINOR**
**4) NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
**5) NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**
**6) BREACH OF MANDATORY DUTY**
**7) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL.**

Plaintiff, JOHN AD DOE, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1. This case involves egregious sexual and emotional abuse of a child.
2. In approximately 1994 and 1995, beginning when he was approximately 9 years old, and following an extended period of predatory grooming, Plaintiff JOHN AD DOE was sexually assaulted and raped by DOE 1, a female member and youth minister of the Defendants' WHITTIER CALIFORNIA STAKE church, inside the church on multiple occasions. Defendants allowed DOE 1, an individual who Plaintiff knew as "Amy", to babysit the Plaintiff in the church and continued to allow her to contact Plaintiff and abuse him in the church after Plaintiff's family members notified the Bishop of the congregation of the ongoing abuse. DOE 1 isolated Plaintiff in secluded areas of the church, his home, and her home and taught him how to kiss, perform oral sex, and eventually forced him to have sex with her. DOE 1, Amy Last Name Unknown, was a trusted member and youth minister of Defendants' church and her predatory behavior with the Plaintiff was known to church leadership who were duty bound to report the abuse to law enforcement. Instead, the Defendants kept DOE 1's, Amy Last name unknown, abuse a secret and allowed DOE 1 to prey on Plaintiff with no accountability or fear of consequences.

## PARTIES

3. Plaintiff JOHN AD DOE (**"Plaintiff"**) is an adult male under the age of forty at the time of this filing and a resident of the County of Los Angeles, State of California. As a victim of childhood sexual assault, as defined by section 340.11 of the Code of Civil Procedure, the name "JOHN AD DOE" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. JOHN AD DOE is entitled to protect his identity in this public court filing by not disclosing his name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful rape, sexual assault, molestation, abuse, and other extreme misconduct by the perpetrator, Defendant DOE 1, Amy Last Name Unknown.
4. Plaintiff's full identity has been concealed from public court filings to prevent those not directly

involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5. Defendant, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation, is and was at all relevant times herein mentioned, the religious entity, located at WHITTIER, California, through which DOE 1, Amy Last Name Unknown, held and used her position as a member and youth minister of the church and a family member of an elder, to groom and sexually abuse Plaintiff. THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS operates wards, meetinghouses, congregations, temples, and other houses of worship within the State of California. The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS does business with and conducts continuous and systemic activities in California. THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of the CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. The divisions of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS are the wards, stakes, and areas. THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6. Defendant, The TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter "TEMPLE CORPORATION") is and was at all relevant times herein mentioned, a religious entity and subsidiary of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. The TEMPLE CORPORATION is a nonprofit corporation duly organized, and operating pursuant to the laws of, the State of Utah. The TEMPLE CORPORATION operates properties, temples, and other houses of worship within the State of California. The TEMPLE CORPORATION does business with and conducts continuous and

systemic activities in California. The TEMPLE CORPORATION's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The TEMPLE CORPORATION is registered to do business in California, and operates, maintains, and manages the CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS's properties at the direction of and under the control of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. The TEMPLE CORPORATION, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7. Defendant, THE WHITTIER CALIFORNIA STAKE, is and was at all relevant times herein mentioned, a religious entity and subsidiary of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. THE WHITTIER CALIFORNIA STAKE is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. THE WHITTIER CALIFORNIA STAKE does business with and conducts continuous and systemic activities in California. THE WHITTIER CALIFORNIA STAKE's principal place of business is 15265 Mulberry Drive, Whittier, California 90602. THE WHITTIER CALIFORNIA STAKE operates, maintains, and manages THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' congregations and wards within Los Angeles County at the direction of and under the control of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. THE WHITTIER CALIFORNIA STAKE has, or as alleged herein had, responsibility for some or all of THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' wards and congregations in Whittier, California. THE WHITTIER CALIFORNIA STAKE reports directly to THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS. THE WHITTIER CALIFORNIA STAKE, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8. Plaintiff will herein after referring to THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, the TEMPLE CORPORATION, WHITTIER CALIFORNIA STAKE, and DOES 2 through 100 as "The LDS DEFENDANTS"

9. Plaintiff is informed and believes, and thereupon alleges, that Doe 1, Amy Last Name Unknown is resident of California. Plaintiff is further informed and believes, and thereupon alleges, that at

all relevant times, DOE 1, Amy Last Name Unknown was a resident of the Whittier area of Los Angeles County.

10. The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by the LDS DEFENDANTS. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, elder, teacher, youth ministers, volunteers, boy scout leaders, missionaries, counselors/therapists, Sunday School and Primary School teachers; The LDS DEFENDANTS and their agents placed individuals, like Doe 1, Amy Last Name Unknown, in positions of responsibility and authority over young church members. As a result, The LDS DEFENDANTS each had a special relationship with members of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff from a foreseeable risk of harm. Upon information and belief, at all relevant times, the LDS DEFENDANTS assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

11. The LDS DEFENDANTS' income comes from member tithes which are turned over to the LDS DEFENDANTS for investment and other uses, including support of the administrative expenditures of the LDS DEFENDANTS' wards, stakes, and areas. The LDS DEFENDANTS do not provide information about their finances to their members or the public. Upon information and belief, the LDS DEFENDANTS receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The LDS DEFENDANTS own financial assets and real estate in excess of 200 billion dollars.

12. The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal

cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

13. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

14. All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

15. Doe 1, Amy Last Name Unknown was an employee, agent, servant, member, and/or volunteer of The LDS DEFENDANTS when she sexually assaulted the Plaintiff—then a minor.

16. During the period of childhood sexual assault and/or abuse of Plaintiff, The LDS DEFENDANTS supervised and exercised control over Plaintiff's abuser.

17. Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

///

**PLAINTIFF'S COMPLAINT IS TIMELY PURSUANT TO C.C.P. SECTION 340.1**

18. Plaintiff's lawsuit is timely pursuant to the provisions of the Code of Civil Procedure § 340.11 (a)(1), which provides an extended period of time for victims of childhood sexual assault to pursue their civil claims against the perpetrator as well as the negligent institutions.

19. Code of Civil Procedure section 340.11 (a)(1) states: "In an action for recovery of damages suffered as a result of childhood sexual assault that occurred before January 1, 2024, the time for commencement of the action shall be within 22 years of the date the plaintiff attains the age of majority…"

20. Pursuant to Code of Civil Procedure section 340.11 subsection (a)(1), Plaintiff JOHN AD DOE's action is timely brought against Defendants.

**JURISDICTION AND VENUE**

21. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Los Angeles County and the State of California.

22. Upon information and belief, Doe 1, Amy Last Name Unknown is a resident of the State of California.

23. The subject incidents upon which this Complaint are based occurred in Whittier, within the County of Los Angeles, in the State of California. As such, venue is proper in the Los Angeles County Superior Court of California.

**FACTUAL ALLEGATIONS**
**(Common to All Causes of Action)**

24. The church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the church. The President and his Counselors function as the First Presidency, which is the highest governing body of the church.[1]

25. The Quorum of the Twelve Apostles is the second-highest governing body of the church. The apostles are regarded by church members as "special witnesses" of Jesus Christ throughout

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

26. Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire church, including every Stake and Ward in California.[2]

27. The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing, and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

28. Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

29. Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

30. Plaintiff JOHN AD DOE was a minor child and a member of the LDS DEFENDANTS' congregation, in WHITTIER, California in approximately 1994. In 1994, Plaintiff regularly attended the LDS DEFENDANTS' church in Whittier and met DOE 1, Amy Last Name Unknown, at the church. DOE 1, Amy Last Name Unknown, was a youth minister and babysat Plaintiff on church grounds on a regular basis.

31. Doe 1, Amy Last Name Unknown, used her position of authority as an youth minister and volunteer with the LDS DEFENDANTS to repeatedly rape and sexually assault Plaintiff over

[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [LDS] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

the course of several months at the LDS DEFENDANTS' church, her home, and at Plaintiff's home. Doe 1, Amy Last Name Unknown, raped and sexually assaulted Plaintiff when he was just 9 and 10 years old in 1994 and 1995. Plaintiff was terrified and didn't understand why DOE 1, Amy Last Name Unknown, was hurting him. Plaintiff told his mother and aunt that DOE 1, Amy Last Name Unknown, was sexually abusing him and his mother and aunt went to the Bishop of the LDS DEFENDANTS' church and reported the ongoing abuse. The Bishop assured Plaintiff's mother that he would "handle" the situation. The Bishop took no action to stop DOE 1's, Amy Last Name Unknown, abuse and did not report the abuse to law enforcement. After Plaintiff's mother reported DOE 1's, Amy Last Name Unknown, to the Bishop and his failure to report the abuse, DOE 1, Amy Last Name Unknown, repreatedly raped the Plaintiff in the LDS DEFENDANTS' church in Whittier, California.

32. Doe 1, Amy Last Name Unknown's sexual abuse of Plaintiff was extreme. Plaintiff endured several humiliating sexual assaults by Doe 1, Amy Last Name Unknown, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had never been given the choice but to trust.

33. Plaintiff is informed and believes and thereupon alleges, that, at all times herein mentioned, Defendants knew or should have known that DOE 1, Amy Last Name Unknown, was using her position of authority within the LDS DEFENDANTS' church to groom and to sexually abuse its minor members, including Plaintiff, and Defendants failed to take reasonable steps to protect him.

34. Prior to the sexual assaults of Plaintiff in approximately 1994 and 1995, and at all times thereafter, Defendants, bishops and/or employees knew, should have known, reasonably suspected, or were otherwise on notice of the sexual abuse perpetrated by DOE 1, Amy Last Name Unknown. DOE 1's interactions with Plaintiff were overt and problematic. Her isolation and rape of the Plaintiff should have been observed by other volunteers and leaders of the LDS DEFENDANTS. Instead of protecting the children in the LDS DEFENDANTS' congregation in WHITTIER, California, the LDS DEFENDANTS turned a blind eye to DOE 1, Amy Last Name Unknown's abuse of Plaintiff, even after Plaintiff's mother reported the abuse to a Bishop of the LDS

DEFENDANTS' church.

35. Defendants knew that DOE 1, Amy Last Name Unknown, by virtue of her position as a youth minister and volunteer, exercised a heightened level of influence, power, and authority over other members of the congregation, and even more so with children. Appropriate measures and safeguards should have been in place to prevent any unsupervised interactions between DOE 1, Amy Last Name Unknown, and other youth members. Because this was not the case, Doe 1, Amy Last Name Unknown, was enabled to repeatedly sexually assault Plaintiff.

36. Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by the LDS DEFENDANTS. Membership records are the LDS DEFENDANTS' way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the LDS DEFENDANTS.

37. Records with "annotations" are also maintained by LDS DEFENDANTS. Annotations are made where a member's conduct has threatened the well-being of other persons or of the LDS DEFENDANTS' church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of CHURCH funds."*** All annotations placed on a member's record are approved by the First Presidency.

38. Defendants have maintained a pattern and practice of concealing abuse from the authorities for decades, and signals that its members should conceal and/or fail to report abuse so as to keep "the church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of

cooperation among church members with law enforcement.

39. The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse." In conjunction with this doctrine, the LDS DEFENDANTS created a helpline for the stated purpose of assisting those who have been abused. Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

40. In reality, the LDS DEFENDANTS' employees and volunteers primarily staff the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement or other government authorities when Bishops and other LDS DEFENDANTS' clergy members call the Helpline regarding sexual abuse within the church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

41. The LDS DEFENDANTS' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

42. In another sexual abuse-related civil lawsuit against the LDS DEFENDANTS and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

LDS DEFENDANTS."[6]

43. In other words, the LDS DEFENDANTS implemented the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in LDS DEFENDANTS' doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect the LDS DEFENDANTS' and their wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

44. Defendants' actions, embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations against its members, volunteers, clergy, and employees internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed DOE 1, Amy Last Name Unknown, and others like her, to continue completely unhindered and protected, even in their predatory conduct. THE LDS DEFENDANTS, their agents, and employees, including bishops, counselors, or personnel mentioned herein, DOES 1-100, and each of them, acted to protect the heinous and unforgiveable acts of Doe 1, Amy Last Name Unknown, and in such action taken against Plaintiff's innocence and vulnerabilities, acted careless, reckless, negligent, and with conscious disregard of a minor's rights.

45. At all times herein mentioned, Defendants and each of them (1) knew how conducive the LDS DEFENDANTS' premises were to sexual abuse and sexual predators, and that sexual predators, such as DOE 1, Amy Last Name Unknown, in particular, had apparent, if not actual, authority within the LDS DEFENDANTS' community, on LDS DEFENDANTS' premises, while 'acting', either literally and/or figuratively, as youth minister and volunteer; (2) knew that members and volunteers of the LDS DEFENDANTS' church and specifically, DOE 1, Amy Last Name Unknown, systematically and continuously leveraged any and all authority which the title and association with the LDS DEFENDANTS conceivably provided her within the community,

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew or should have known that leaving Plaintiff or any youth members of the LDS DEFENDANTS under the supervision of DOE 1, Amy Last Name Unknown, or within her presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Plaintiff.

46. The LDS DEFENDANTS provided direct access to a large youth community wherein a danger to the community, DOE 1, Amy Last Name Unknown, wielded power over the Plaintiff.

47. Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers of the LDS DEFENDANTS knew that DOE 1, Amy Last Name Unknown, was isolating and raping Plaintiff inside the LDS DEFENDANTS' chuch. Therefore, Defendants knew that DOE 1, Amy Last Name Unknown, was engaging in inappropriate behavior and conduct Plaintiff, while she babysat Plaintiff at the LDS DEFENDANTS' chruch and failed to take any remedial action to stop or prevent further sexual assault of Plaintiff.

48. Prior to, during, and after Perpetrator's sexual assault and/or sexual abuse, and molestation of Plaintiff, the LDS DEFENDANTS, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that DOE 1, Amy Last Name Unknown's, conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

49. Notwithstanding their knowledge of DOE 1, Amy Last Name Unknown's, sexual assault and/or sexual abuse, and molestation of minor children, Defendants intentionally and purposely failed to notify or warn other children, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by DOE 1, Amy Last Name Unknown, limit or supervise her access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

50. Further, LDS DEFENDANTS' failure and/or refusal to report the sexual assault and/or sexual abuse of minor children by their Elders, Bishops, employees, volunteers, youth ministers, and/or

agents created a foreseeable risk of sexual assault and/or abuse of Plaintiff by DOE 1, Amy Last Name Unknown.

51. As a direct result of LDS DEFENDANTS' failure and/or refusal to timely and adequately act to prevent, stop, and report DOE 1, Amy Last Name Unknown's, unlawful and inappropriate misconduct, DOE 1, Amy Last Name Unknown, was able to sexually assault and/or sexually abuse, and molest Plaintiff repeatedly.

52. The LDS DEFENDANTS acting through their representative, agents, and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by DOE1, Amy Last Name Unknown, because, inter alia, the LDS DEFENDANTS:

a. Negligently hired, supervised, retained, monitored, and/or investigated DOE 1, Amy Last Name Unknown.

b. Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c. Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of children, including Plaintiff, to law enforcement.

53. The LDS DEFENDANTS also intentionally and willfully implemented various measures intended and designed to, or which effectively, made DOE 1, Amy Last Name Unknown's conduct harder to detect including, but not limited to:

a. Permitting DOE 1, Amy Last Name Unknown, to remain in a position of good standing after The LDS DEFENDANTS knew or should have known, reasonably suspected, or were otherwise on notice, that DOE 1, Amy Last Name Unknown, sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b. Permitting DOE 1, Amy Last Name Unknown, continued and/or unsupervised access to Plaintiff, after The LDS DEFENDANTS knew or should have known, reasonably suspected, or were otherwise on notice, of DOE 1, Amy Last Name Unknown's

misconduct that created a risk of childhood sexual assault.

c. Failing to inform or concealing from law enforcement officials after The LDS DEFENDANTS knew or should have known, reasonably suspected, or were otherwise on notice, that DOE 1, Amy Last Name Unknown, had, and/or was, engaged in the sexual assault of minor children, including Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d. Holding out and affirming DOE 1, Amy Last Name Unknown, to Plaintiff and Plaintiff's parent, other children, and their parents, and to the community as being in good standing and trustworthy.

e. Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, youth ministers, and volunteers including DOE 1, Amy Last Name Unknown, with minor children.

f. Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives, or agents to ensure that they did not molest or assault minors in LDS DEFENDANTS' custody or care, including Plaintiff.

54. The LDS DEFENDANTS, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report DOE 1, Amy Last Name Unknown, to law enforcement prior to, during, and/or after her sexual assault and/or sexual abuse of Plaintiff thus allowing to continue unabated.

55. Plaintiff is informed, believes, and thereupon alleges, that The LDS DEFENDANTS' failure and/or refusal to satisfy their duties to Plaintiff was a part of The LDS DEFENDANTS' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

56. Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated

by a desire to protect the reputation of The LDS DEFENDANTS and each of them, and to protect the monetary support of The LDS DEFENDANTS while fostering an environment where such assault could continue to occur.

57. The wrongful, intentional, negligent acts and/or omissions of The LDS DEFENDANTS, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**
**(Plaintiff Against the LDS DEFENDANTS and DOES 2-100)**

58. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

59. Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of DOE 1, Amy Last Name Unknown, by way of the special relationship existing between those individuals.

60. Defendants knew or should have known of DOE 1, Amy Last Name Unknown's, misconduct, and inappropriate sexual behavior directed by DOE 1, Amy Last Name Unknown, to minor children, including Plaintiff. Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront DOE 1, Amy Last Name Unknown, regarding the abuse, despite having a legal duty to do so.

61. As a result of Defendants' negligence, Plaintiff JOHN AD DOE was sexually abused by DOE 1, Amy Last Name Unknown.

62. Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship Defendants had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

63. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

### NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against the LDS DEFENDANTS and DOES 2-100)

64. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

65. Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, DOE 1, Amy Last Name Unknown, on Defendants' premises and during Defendants' sponsored activities. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like DOE 1, Amy Last Name Unknown, a figure of influence and authority for the Defendants' church community shared with Plaintiff.

66. Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that DOE 1, Amy Last Name Unknown, was engaged in an inappropriate and harassing relationship with Plaintiff, and exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with DOE 1, Amy Last Name Unknown; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that he could be with DOE 1, Amy Last Name Unknown; and allowing DOE 1, Amy Last Name Unknown, to repeatedly sexually harass and abuse the minor Plaintiff during Defendants' sponsored activity.

67. Had Defendants adequately and properly supervised, monitored, and protected its minor members who were on Defendants' premises, Plaintiff would not have been harmed.

68. Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

69. Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff

would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

70. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**THIRD CAUSE OF ACTION**
**SEXUAL ABUSE OF A MINOR**
**(Plaintiff Against All Defendants and DOES 1-100)**

71. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72. While Plaintiff was a member at Defendants' WHITTIER CALIFORNIA STAKE congregation, DOE 1, Amy Last Name Unknown, took advantage of her position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

73. Defendants ratified DOE 1, Amy Last Name Unknown's, sexual abuse of Plaintiff because Defendants had knowledge that she had sexually inappropriate relationship with Plaintiff, yet they intentionally turned a blind-eye and still allowed her to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing DOE 1, Amy Last Name Unknown, to repeatedly sexually abuse Plaintiff inside the Defendants' church. Defendants did not discipline, denounce, or discharge DOE 1, Amy Last Name Unknown; as such, they instead accepted and thus ratified her conduct.

74. At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with the Defendants' Church of Jesus Christ of Latter-day Saints when they ratified DOE 1, Amy Last Name Unknown's, criminal conduct and adopted it as if it were their own conduct.

75. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional

distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

76. In committing the acts described herein, the conduct of DOE 1, Amy Last Name Unknown, the LDS DEFENDANTS, their agents, and employees, and DOES 1-100, was despicable, and done with malice, oppression, and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, the LDS DEFENDANTS.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT HIRING, SUPERVISION & RETENTION**
**(Plaintiff Against the LDS DEFENDANTS and DOES 2-100)**

77. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78. Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 1-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents, volunteers, and employees who would be working with minors and students to protect the minors within the LDS DEFENDANTS' church community from harm caused by unfit and dangerous individuals within their employ and supervision.

79. During the time Plaintiff was being sexually abused by DOE 1, Amy Last Name Unknown, Defendants knew or should have known of DOE 1, Amy Last Name Unknown's, inappropriate sexually behavior with children, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Doe 1, Amy Last Name Unknown.

80. Defendants knew or should have known that DOE 1, Amy Last Name Unknown, engaged in repeated misconduct against Plaintiff but did nothing to stop her.

81. Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise DOE 1, Amy Last Name Unknown, on Defendants' premises and during Defendants' sponsored activities.

82. Had Defendants, each of them, properly investigated, supervised, trained, and monitored DOE 1, Amy Last Name Unknown's, conduct and actions they would have discovered that she was unfit to be given access to and have authority over children. By failing to adequately supervise, monitor, or investigate, Defendants allowed DOE 1, Amy Last Name Unknown, to continue, unhindered, with her predatory conduct directed towards underage members of the church community, including Plaintiff.

83. Defendants negligently hired, supervised, retained, monitored, and otherwise employed DOE 1, Amy Last Name Unknown, and negligently failed to ensure the safety of a minor community member in the church, Plaintiff, who was entrusted to Defendants' custody, care, and control.

84. Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors by members of the priesthood, Elders, volunteers, and other agents, including the DOE 1, Amy Last Name Unknown.

85. Had Defendants, and each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Elders', priests, counselors, volunteers, and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

86. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**
**(Plaintiff Against The LDS DEFENDANTS and DOES 2-100)**

87. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

88. Defendants, their agents, and employees, each of them, had a duty to warn, train and educate

their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its volunteers, faculty, and staff. Defendants, their agents, and employees, and DOES 1-100, also had a duty to warn, train and educate its faculty and staff on its sexual abuse policy and inappropriate boundary crossing within the youth community.

89. Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty, volunteers, and staff, including DOE 1, Amy Last Name Unknown; by failing to inform and educate him on its sexual abuse policies and the methods to identify, report, and respond to sexual abuse by members of the priesthood or other adults in positions of power; and by failing to train its faculty and staff, including DOE 1, Amy Last Name Unknown, on Defendants' sexual harassment and abuse policies.

90. As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 1-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by DOE 1, Amy Last Name Unknown.

91. Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

92. As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings an earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**SIXTH CAUSE OF ACTION**
**BREACH OF MANDATORY DUTY:**
**FAILURE TO REPORT SUSPECTED CHILD ABUSE**
**(Plaintiff Against the LDS DEFENDANTS and DOES 2-100)**

93. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

94. Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were

legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

95. Defendants, acting through their employees, had, or should have had a reasonable suspicion that DOE 1, Amy Last Name Unknown, was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

96. Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

97. By failing to report suspected child abuse, Defendants allowed DOE 1, Amy Last Name Unknown, to continue, unhindered, in his abuse of minor children, including Plaintiff.

98. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**SEVENTH CAUSE OF ACTION**

**(Battery)**

**(Against DOE 1, Amy Last Name Unknown)**

99. Plaintiff incorporates herein by this reference all paragraphs of this Complaint as if fully set forth herein.

100. In approximately 1994 and 1995, defendant DOE 1, Amy Last Name Unknown, threatened and intimidated the Plaintiff and engaged in unpermitted, harmful, and offensive sexual conduct and contact upon the person of Plaintiff on numerous occasions.

101. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**EIGHTH CAUSE OF ACTION**
**(Assault)**
**(Against DOE 1, Amy Last Name Unknown)**

102. Plaintiff incorporates herein by this reference all paragraphs of this Complaint as if fully set forth herein.

103. During approximately 1994 and 1995, Defendant DOE 1, Amy Last Name Unknown, by physically isolating Plaintiff from his parents and other minor church community members intended to cause Plaintiff apprehension of an imminent harmful and offensive contact with his person.

104. As a result of defendant DOE 1, Amy Last Name Unknown's acts, Plaintiff was in fact, placed in great apprehension of imminent harmful and offensive physical contact with Plaintiff.

105. In performing the acts alleged above, defendant DOE 1, Amy Last Name Unknown, acted with the intent of making physical contact with Plaintiff.

106. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JOHN AD DOE prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; THE WHITTIER CALIFORNIA STAKE, also known as THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 1 to 100, inclusive, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;
2. Attorney's fees;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

DATED: November 15, 2024

WATERS KRAUS PAUL & SIEGEL

By: ____________________
KEVIN LOEW, ESQ.
SUSAN M. ULRICH, ESQ.
NICOLE POURSALIMI, ESQ
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all issues so triable.

DATED: November 15, 2024

WATERS KRAUS PAUL & SIEGEL

By: ______________________
KEVIN LOEW, ESQ.
SUSAN M. ULRICH, ESQ
NICOLE POURSALIMI, ESQ
Attorneys for Plaintiff